UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LAURIE ANN P.,

        Plaintiff,

   v.                               **DECISION AND ORDER**

                                         21-CV-6382S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

    1.    Plaintiff Laurie Ann P.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income under Title XVI of the Act. (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

    2.    Plaintiff protectively filed her application with the Social Security Administration on March 9, 2018.  Plaintiff amended alleged disability beginning March 9, 2018, due to chronic lower back pain secondary to mild thoraco-lumbar degenerative disc disease with spondylosis, herniated discs at L4-L5 and L5-S1 levels with minimal spinal stenosis, mild neuroforaminal narrowing at the L4-L5 and L5-S1 levels, chronic pain syndrome; Von Willebrand disease[2] ("VWD"); depression; anxiety; and posttraumatic stress disorder ("PTSD").  Plaintiff's application was denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2] A blood disorder where blood does not clot properly, see Docket No. 17, Pl. Memo. at 3 n.2.

3. On August 27, 2020, ALJ Asad Ba-Yunus held a telephonic hearing (due to COVID-19) at which Plaintiff—represented by counsel—and Vocational Expert Debra Horton appeared and testified. (R.³ at 28, 47-128.) At the time of the hearing, Plaintiff was 44 years old when she applied, with a high school education (R. at 39, 28). Plaintiff lacks past relevant work experience (R. at 39).

4. The ALJ considered the case *de novo* and, on September 1, 2020, issued a written decision denying Plaintiff's applications for benefits. Plaintiff appealed to the Appeals Council and it rejected post-hearing evidence Plaintiff submitted from social worker Sheila Albers because that evidence postdated the ALJ's decision and was unlikely to change the outcome of that decision (R. at 2). After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.⁴ (Docket No. 1.)

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 17, 19.) Plaintiff filed a response on May 25, 2022 (Docket No. 20), at which time this Court took the Motions under advisement without oral argument. For the reasons that follow, Plaintiff's Motion (Docket No. 17) is **granted**, and Defendant's Motion (Docket No. 19) is **denied**.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

³Citations to the underlying administrative record are designated as "R."

⁴The ALJ's September 1, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work.  Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 9, 2018, the application date. (R. at 30.) At Step Two, the ALJ found that Plaintiff has the following severe impairments: chronic lower back pain secondary to mild thoraco-lumbar degenerative disc disease with spondylosis, herniated discs at L4-L5 and L5-S1 levels with minimal spinal stenosis, mild neuroforaminal narrowing at the L4-L5 and L5-S1 levels, chronic pain syndrome; VWD; depression; anxiety; and PTSD (R. at 30-31). At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff may occasionally, but not repetitively, lift overhead; she can sit for 6 hours during an 8-hour workday for no more than 40 minutes at one time with standing or walking for 1-2 minutes while staying on-task; Plaintiff can stand for 2 hours of an 8-hour workday for 30 minutes at a time; she can walk for 2 hours of an 8-hour workday for no more than 20 minutes at a time, for a total stand/walk time of 4 hours in an 8-hour workday; Plaintiff can occasionally stoop, kneel, crouch, climb ramps/stairs; she is unable to climb ladders, ropes, or scaffolds; she is unable to crawl; she must avoid unprotected heights, dangerous machinery, vibration, extreme cold, and sharp objects; she can have frequent interaction with supervisors but

only occasional interaction with coworkers and the public; Plaintiff can tolerate occasional changes to a routine work setting (R. at 33-34.)

13. At Step Four, the ALJ found Plaintiff had no past relevant work. (R. at 39.) At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 39-40.) The ALJ posed hypotheticals to the Vocational Expert of a claimant like Plaintiff in age, education, and work experience. The expert opines that the hypothetical claimant could perform such work as a document preparer; taper, printed circuit board; and table worker, even if the number of jobs is reduced factoring in the claimant's occasional interaction with the public (R. at 40, 40 n.1.) Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 40.)

14. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ improperly assessed opinion evidence and concluded an improper RFC. Plaintiff contends the ALJ failed to properly assess her symptoms. She argues the Appeals Council (R. at 2) improperly rejected the September 2020 opinion of mental health therapist Sheila Albers (R. at 16-20). For the reasons that follow, Plaintiff established that the ALJ erred in considering her social interaction.

15. Under the Social Security standards applicable for Title XVI applications after March 2017 for evaluating medical evidence (such as Plaintiff's application here), the agency considers the persuasiveness of a medical opinion, 20 C.F.R. § 416.920c(a). The agency considers the supportability and consistency of the opinions as the most important factors, id. § 416.920c(c)(1), (2), (b)(2). The ALJ must explain his approach with respect to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021)

(Carter, Mag. J.) (citing, e.g., 20 C.F.R. § 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. § 416.920c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. § 416.920c(b)(1).

16. Plaintiff first argues the ALJ improperly assessed the examining opinions of Drs. Allan Levine, Harbinder Toor, and A. Periakaruppan, and treating physician, Dr. Cristiana Rusu.

17. Impartial medical expert Dr. Levine reviewed Plaintiff's medical file and concluded Plaintiff could lift 20 pounds occasionally and 10 pounds frequently and can lift overhead (R. at 35-36, 82, 98).  The ALJ found Dr. Levine's assessment was largely persuasive (R. at 36).

18. Plaintiff argues that the RFC did not include Dr. Levine's assessment that she could only occasionally twist her cervical spine (Docket No. 17, Pl. Memo. at 19; Docket No. 20, Pl. Reply Memo. at 2-4).

19. Consultative examiner Dr. Toor (R. at 443; Docket No. 17, Pl. Memo. at 17) found that Plaintiff had moderate limitations in reaching or twisting of the cervical spine, moderate limitations in walking, standing, sitting long time (R. at 443).  The ALJ was somewhat persuaded by Dr. Toor's assessment, noting that the doctor's opinions are "vocationally rather vague" and outside of his area of expertise in nuclear medicine, a nonclinical field (R. at 36).

20. Plaintiff repeats her objection that the ALJ did not include her ability to twist in the RFC (Docket No. 17, Pl. Memo. at 19; Docket No. 20, Pl. Reply Memo. at 3-4).

Furthermore, she contends that the ALJ lacked medical evidence and thus rendered a lay opinion as to her cervical limitations (Docket No. 20, Pl. Reply Memo. at 4).

21. State agency consultant, Dr. Periakaruppan also found that Plaintiff could carry 20 pounds occasionally and 10 pounds frequently, can sit for 6 hours in an 8-hour workday, can stand or walk for 6 hours in an 8-hour workday (R. at 137-39, 36; Docket No. 17, at 17).  The ALJ was somewhat persuaded by this assessment but concluding (as with Dr. Levine's) Plaintiff could perform light work "somewhat understates the full extent of claimant's physical limitations" and reading the record most favoring Plaintiff (R. at 36).

22. Dr. Rusu, Plaintiff's primary care provider, concluded that Plaintiff was "severely limited," that is she was able to work for only 1-2 hours per 8-hour workday, that she can lift less than 10 pounds (R. at 467, 576, 36-37).  The ALJ applied the Estrelle v. Berryhill, 925 F.3d 90 (2d Cir. 2019), factors and found Dr. Rusu's assessment to be partially persuasive.  Dr. Rusu treated Plaintiff since 2017 and has a longitudinal treatment perspective.  (R. at 36-37.)  The ALJ found, however, that Dr. Rusu's assessment that Plaintiff can be expected to be off task up to 67% of the workday (R. at 577) is unsubstantiated by the record (R. at 37).

23. While Plaintiff points to these ALJ errors in assessing medical opinions in the record, the ALJ's crucial error in finding Plaintiff's limitations in social interaction.  This Court need not evaluate the sufficiency of the physical medical evidence in support of the ALJ's finding because of the mental health error in evaluating Plaintiff's social interaction warrants remand.

24. Plaintiff argues that the ALJ did not explain the different limitations she has for social interactions with supervisors than coworkers or the public (Docket No. 17, Pl. Memo. at 19-20; Docket No. 20, Pl. Reply Memo. at 5-6), see Jalessa H. v. Comm'r, 580 F. Supp. 3d 1, 8 (W.D.N.Y. 2022) (Wolford, C.J.).

25. Defendant counters that the ALJ's mental health finding was consistent with concluding that she had moderate limitations in social functioning (Docket No. 19, Def. Memo. at 10).

26. State agency Dr. M. Juriga, Ph.D., found that Plaintiff had moderate limitations in interacting with the public and coworkers (R. at 140-41) and had moderate limitation in accepting instructions and responding appropriately to criticism from supervisors (R. at 140; see R. at 38). Consultative psychologist Dr. Todd Deneen, Psy.D., also found that Plaintiff had moderate limitations with her ability to interact with coworkers, supervisors, or the public (R. at 449, 33, 38).

27. The ALJ found these opinions were persuasive (R. at 33, 38), but the ALJ distinguished Plaintiff's ability to interact with supervisors from her ability to interact with coworkers or the public (R. at 33-34) without stating the reason for this distinction.

28. In Jalessa H., Chief Judge Wolford found that the ALJ there erred in finding that claimant could occasionally interact with the public but could frequently interact with coworkers and supervisors despite assessing Dr. Gregory Fabiano's opinion that this claimant had marked limitation to interact with supervisors, coworkers, and the public, 580 F. Supp. 3d at 8. Chief Judge Wolford explained that "although under the new regulations the ALJ is not required to give specific evidentiary weight to a particular medical opinion, he is still required to articulate how he considered the medical opinion,

including explaining how he considered the 'supportability' and 'consistency' factors. Here, the ALJ did not <u>explain</u> anything," id. at 8-9 (emphasis in original). That ALJ's "conclusory analysis," as here, precludes this Court "from undertaking meaningful review of" the evaluation of the medical opinion evidence for its supportability and consistency, id. at 9.

29. The ALJ for Laurie Ann P.'s present application makes the same error and does not distinguish how she could interact with one group of people (frequent interactions with her supervisors, R. at 33-34) but not others (occasionally with coworkers and public, R. at 34) despite finding at Step Two she had moderate difficulty interacting with others (R. at 32) and that Drs. Deneen and Juriga's assessments (also noting her difficulties in interaction with supervisors as well as coworkers and the public) were persuasive (R. at 33).

30. This inconsistency is legal error. The ALJ compounds this error by factoring the occasional interaction with the public in accepting the Vocational Expert's opinion about the number of positions a hypothetical claimant like Plaintiff could perform (R. at 40 n.1). The ALJ, however, did not consider Plaintiff's limitations in dealing with supervisors (as observed by Drs. Deneen and Juriga, R. at 104, 449) that may have further reduced the number of jobs she could perform.

31. Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is granted because of the ALJ's consideration of Plaintiff's limitations in social interaction.

32. This remand also affords the ALJ the opportunity to reconsider Plaintiff's physical limitations in her neck and cervical spine and consideration of medical opinion evidence.

33. Finally, the Appeals Council rejected Ms. Albers September 2020 report to support Plaintiff's disability application because that report postdated the ALJ's decision and would not change that result (R. at 2).

34. By remanding this case on other grounds, Ms. Albers's September 2020 report may be also considered by the ALJ in evaluating Plaintiff's disability.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 17) is GRANTED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is DENIED.

FURTHER, that this case is REMANDED to the Commissioner of Social Security for further proceedings consistent with this decision.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      February 28, 2023
            Buffalo, New York


                                                    s/William M. Skretny
                                                    WILLIAM M. SKRETNY
                                                    United States District Judge